Patrick L. Tanner (Utah Bar No. 7319)
BURBIDGE & WHITE, LLC
15 West South Temple, Suite 950
Salt Lake City, Utah 84101
Telephone: (801) 359-7000
Facsimile: (801) 236-5319
PTanner@burbidgewhite.com

Jay Jerde (WSB# 6-2773)  (pro hac vice application pending)
Deputy Attorney General
James Kaste (WSB# 6-3244) (pro hac vice application pending)
Senior Assistant Attorney General
123 Capitol Building
Cheyenne, WY  82002
Telephone: (307) 777-6946
Facsimile: (307) 777-3542
jjerde@state.wy.us
jkaste@state.wy.us

Attorneys for *Amicus Curiae* State of Wyoming

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| STATE OF UTAH, | ) |
| | ) |
| Plaintiff, | ) **STATE OF WYOMING'S** |
| | ) **MEMORANDUM IN SUPPORT OF** |
| vs. | ) **MOTION FOR LEAVE TO** |
| | ) **PARTICIPATE AS *AMICUS*** |
| KEN SALAZAR, in his official capacity | ) ***CURIAE*** |
| As Secretary for the Department of Interior; | ) |
| the DEPARTMENT OF THE INTERIOR, | ) |
| an agency of the United States of America; | ) |
| ROBERT V. ABBEY, in his official capacity | ) Case No. 2:11-CV-00391-DB |
| as Director for the Bureau of Land Management; | ) |
| and the BUREAU OF LAND MANAGEMENT, | ) Judge Dee Benson |
| an agency of the United States of America, | ) |
| | ) |
| Defendants. | ) |

The State of Wyoming, through its undersigned attorneys, hereby moves for leave to appear in all phases of this action as *amicus curiae*. The State of Wyoming believes that it is permitted to appear in this matter as *amicus curiae* without leave of court pursuant to FED. R.

APP. P. 29(a) as substantial portions of this matter invoke this Court's appellate jurisdiction. Out of an abundance of caution, however, the State of Wyoming seeks the Court's leave to participate in this matter and offers the following in support of its Motion for Leave to Participate as *Amicus Curiae*:

## BACKGROUND

On December 22, 2010, without any notice or opportunity for public comment, the Secretary of the Interior issued Secretarial Order No. 3310, to provide "direction to the [Bureau of Land Management (BLM)] regarding its obligation to maintain wilderness resource inventories on a regular and continuing basis for public lands under its jurisdiction." *See* SOI Order No. 3310, 2010 WL 5541091 § 1 (D.O.I. Dec. 22, 2010). The Order "directs the BLM to protect wilderness characteristics through land use planning and project-level decisions unless the BLM determines . . . that impairment of wilderness characteristics is appropriate[.]" *Id.* "Wilderness characteristics" are defined by the Wilderness Act, 16 U.S.C. 1131(c). *Id.* § 3. The Order applies to all public lands administered by the BLM, and as a practical matter halts most new productive uses of the public lands. The Order imposes a stringent non-impairment mandate on the public lands unless and until the BLM establishes that a particular parcel either does not have wilderness characteristics or that other uses are appropriate. *Id.* § 4.

The Order radically alters the balance of multiple uses on the public lands in favor of wilderness and immediately upends every Resource Management Plan in the country.[1] The

---

[1] New decisions below the Resource Management Planning level also are being affected by the Order. For example, the BLM recently withheld six oil and gas leases in Wyoming, and a spokesman for the agency indicated that the decision had "everything to do with the secretarial order on wild lands." *See* Casper Star-Tribune April 28, 2011; 2010 WL 5541091 § 5(d)(3).

Order fundamentally misconstrues the separation between wilderness and other resource values established by the Federal Land Policy and Management Act of 1976 (FLPMA), 43 U.S.C. §§ 1701 through 1785, and attempts to circumvent the clearly expressed will of Congress by establishing de facto wilderness study areas. In addition to its substantive unlawfulness, the Order was promulgated under cover of darkness without public notice and comment as required by the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 through 706, and without any environmental analysis as required by National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 through 4370. On its face, the Order is procedurally and substantively unlawful, and its existence and implementation works disproportionate harms on the State of Wyoming.

On April 29, 2011, the State of Utah filed a Complaint against the Secretary of the Interior, the Department of the Interior, the Director of the BLM, and the BLM alleging that Secretarial Order 3310 and the resulting BLM Manuals were promulgated unlawfully. The State of Utah generally alleges that Secretarial Order 3310 is an *ultra vires* act, that the Secretary unlawfully circumvented the notice and comment rulemaking procedures required by the APA, that the Order violates the procedural requirements of the FLPMA, that the Order was promulgated in violation of NEPA, that the Order is arbitrary and capricious, and that the Order violates a 2005 Settlement Agreement between the State of Utah and the Department of the Interior. The State of Utah asks the Court to declare unlawful and set aside the Order.

## DISCUSSION

The State of Utah's Complaint combines claims for review of agency action with original claims for relief, and therefore, Utah asks this Court to act as both a trial court and as an

---

(note 1 continued) This is true even though Congress has imposed a funding moratorium on implementation of the Order. *See* P.L. 112-10, 2011 H.R. 1473, § 1769.

appellate court.  *See e.g. Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994) ("A district court is not exclusively a trial court.").  Regardless of the capacity in which the Court sits, however, the State of Wyoming should be permitted to participate as *amicus curiae*.

As a trial court governed by the Federal Rules of Civil Procedure, "[t]he extent, if any, to which an *amicus curiae* should be permitted to participate in a pending action is solely within the broad discretion of the district court."  *Waste Mgmt. of Pa., Inc. v. City of York*, 162 F.R.D. 34, 36 (M.D.Pa. 1995).  "A court may grant leave to appear as an *amicus* if the information offered is 'timely and useful.' " *Id.* (quoting *Yip v. Pagano*, 606 F.Supp. 1566, 1568 (D.N.J. 1985), *aff'd mem.*, 782 F.2d 1033 (3rd Cir.).  Generally, a court should err on the side of granting leave, rather than risk the loss of a resource which might be of assistance to the disposition of the case.  *Neonatology Assocs., P.A. v. Comm'r IRS*, 293 F.3d 128, 133 (3d Cir. 2002) (single judge decision authored by Justice Alito).  Because no rule or statute governs the exercise of the district court's discretion to grant or deny leave to file an *amicus* brief, a district court may seek guidance from Rule 29 of the Federal Rules of Appellate Procedure.

When this Court sits as an appellate court, however, motions for leave to participate as *amicus curiae* are explicitly governed by Rule 29.  Pursuant to Rule 29, a party seeking leave to appear as an *amicus* must have an interest in the matter, and must show that its participation would be both desirable and limited to matters relevant to the disposition of the case.  *See* FED. R. APP. P. 29(b)(1) and (2).  These criteria should be broadly interpreted, and motions for leave to participate as *amicus curiae* should generally be granted "unless it is obvious that the proposed briefs do not meet Rule 29's criteria[.]"  *Neonatology Assocs.*, 293 F.2d at 133.

4

The State of Wyoming has significant interests at stake in these proceedings. The BLM controls over 18 million acres of land within the boundaries of the State of Wyoming, and these lands contribute substantially to the welfare of the State and its citizens. *See e.g.*, Exhibit 1. BLM lands in Wyoming provide a host of benefits to the State including recreational opportunities, habitat for wildlife, and range for livestock grazing. Moreover, as set forth in the BLM Wyoming 2010 Annual Report:[2]

- BLM Wyoming administers over 16,771 federal oil and gas leases covering about 12 million acres of federal land (31 percent of total mineral estate under BLM jurisdiction)
- BLM Wyoming leads the country in federal oil and gas production producing 27.6 million barrels of oil per year and 1,639 billion cubic feet of gas per year
- BLM Wyoming leads the country in coal production with the 10 largest producing coal mines in the U.S., providing coal to 35 states and generating nearly 40 percent of the nation's electricity
- Bentonite deposits in Wyoming comprise approximately 70 percent of the world's known supply

2010 Annual Report at 3. BLM lands in Wyoming also produce uranium, trona, and timber among other resources. Id. at 4-5. The State receives approximately 48 percent of the total mineral revenue generated from BLM lands in Wyoming, which in fiscal year 2010 amounted to nearly $1 billion. *Id.* Accordingly, any management direction from the Secretary that takes BLM lands out of multiple use management and treats those lands as wilderness will have a significant economic effect on the State of Wyoming.

In addition, interspersed among the 18 million acres of BLM lands within the State are millions of acres of state trust lands. *See* Surface Management Map of Wyoming, attached as Exhibit 2. Many of these parcels are completely surrounded by BLM lands, thus any

---

[2] The 2010 Annual Report is available at
http://www.blm.gov/pgdata/etc/medialib/blm/wy/information/annualreports.Par.59860.File.dat/2010anrpt.pdf

management action on the surrounding BLM lands has a substantial effect on the value of the State's lands. *Id.* For example, in many areas state and federal grazing leases are managed cooperatively as state lands are located adjacent to and/or completely surrounded by federal land. It is not feasible to fence the state lands, and even if it were, it would often not be economically viable to continue grazing without the surrounding federal lands. Accordingly, any management action by the BLM which favors wilderness over grazing harms the State of Wyoming and the trust beneficiaries.

Due to the interconnectedness of the state and federal lands, the State of Wyoming also has substantial sovereign and regulatory interests in the management of the public lands. For example, Title 11 of the Wyoming Statutes contains a host of provisions related to the management and promotion of livestock grazing within the state without regard to whether grazing occurs on federal, state, or private land. Moreover, the impacts of development activities on land, air, and water quality are subject to regulation by multiple state agencies, including the Wyoming Department of Environmental Quality (WDEQ) (WYO. STAT. ANN. §§ 35-11-101 through 1803), the State Engineer's Office (WYO. STAT. ANN. §§ 41-3-101 through 1014), the Board of Land Commissioners, and the Office of State Lands and Investments (WYO. STAT. ANN. §§ 36-1-101 through 36-3-111, 36-5-101 through 36-7-510, and 36-9-101 through 120). It is widely recognized that states have a legally protected interest in litigation affecting the management of natural resources under their control. *See e.g. Sierra Club v. City of San Antonio*, 115 F.3d 311, 315 (5th Cir. 1997) (recognizing Texas' sovereign interest in aquifer management sufficient to warrant intervention); *Forest Conservation Council v. U.S. Forest*

*Serv.*, 66 F.3d 1489, 1495 (9th Cir. 1995) (recognizing Arizona's sovereign duty to manage state lands, which were adjacent to Forest Service lands).

The State of Wyoming has extensive, and predominantly exclusive, sovereign interests in the quality of the environment within the State's borders.  In particular, the State of Wyoming through the WDEQ Land Quality Division, not the BLM, regulates all mining and reclamation operations within the State's borders.  *See* WYO. STAT. ANN. §§ 35-11-401 through 437.  Similarly, the WDEQ Air Quality Division is the sole regulator of the State's air resources.  *See* WYO. STAT. ANN. §§ 35-11-101 through 803; WDEQ Air Quality Regs. Ch. 1 § 1 through Ch. 14 § App. A.  Finally, the WDEQ Water Quality Division and the Wyoming State Engineer's Office are the sole enforcement agencies with authority over water rights and water quality within the State of Wyoming.  *See* WYO. STAT. ANN. §§ 35-11-301 through 318, WYO. CONST. art. 8, § 5.

The Order circumvents the State of Wyoming's authority by taking lands out of multiple use management and otherwise precluding the productive use of the public lands without regard to the protective regulatory regimes established by the State of Wyoming.  Accordingly, as a result of the direct effects any decision in this matter may have on state lands, state revenues, and state regulatory interests, the State of Wyoming has a sufficient interest in this litigation to satisfy Rule 29(b)(1).

The State of Wyoming's participation in this litigation is also desirable and will be limited to facts and arguments that are relevant to the disposition of the case.  As a neighboring landowner and as a result of the expertise of its agencies, the State of Wyoming has information relevant to this matter that is not readily available to the parties.  Moreover, with over 18 million

acres of BLM lands within its boundaries, the State of Wyoming is well suited to advise the Court on the broader impacts of this case and the Wild Lands policy. Accordingly, the State's proposed participation as *amicus curiae* meets the desirability and relevance criteria of Rule 29(b)(2).

In addition to satisfying the criteria set forth in Rule 29, the State's motion is timely. This litigation is in its early stages, and the Defendants have not yet answered the Complaint. Accordingly, the State of Wyoming asserts that no party will be prejudiced by the State's participation, and the State will meet any schedule set by the Court.

## CONCLUSION

Whether this Court exercises its original or appellate jurisdiction in this case, the State of Wyoming satisfies the applicable requirements for participation as *amicus curiae*. This litigation could have a significant impact on BLM lands outside the State of Utah, and the State of Wyoming should be afforded the opportunity to protect its significant interest in the management of the public lands within its boundaries.

//
//
//
//
//
//

WHEREFORE, the State of Wyoming requests that this Court grant it leave to appear in all phases of this litigation as *amicus curiae*.

SUBMITTED this 26th day of May, 2011.

                                       Attorneys for [Proposed] *Amicus Curiae*
                                       State of Wyoming

                                       /s/ Patrick L. Tanner
                                       Patrick L. Tanner (Utah Bar No. 7319)
                                       BURBIDGE & WHITE, LLC
                                       15 West South Temple, Suite 950
                                       Salt Lake City, Utah 84101
                                       Telephone:  (801) 359-7000
                                       Facsimile:  (801) 236-5319
                                       PTanner@burbidgewhite.com

                                       Jay Jerde (WSB# 6-2773)
                                       Deputy Attorney General
                                       jjerde@state.wy.us

                                       James Kaste (WSB# 6-3244)
                                       Senior Assistant Attorney General
                                       123 Capitol Building
                                       Cheyenne, WY  82002
                                       (307) 777-6946
                                       (307) 777-3542 Facsimile
                                       jkaste@state.wy.us